IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID D MCBREEN, ID # 1192978, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:06-CV-2154-B (BH) |
| | ) | ECF |
| NATHANIEL QUARTERMAN, Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
| Respondent. | ) | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

### A. Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 to challenge his convictions for aggravated sexual assault of a child in Cause Nos. F02-25495-IV and F02-25497-IV. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

### B. Procedural and Factual History

In July 2002, petitioner was indicted for sexual offenses that occurred on or about December 1 and 15, 2001. CR[1] at 2; CR-II at 2. On August 28, 2003, a jury found petitioner guilty of two

---

[1] "CR" refers to the Clerk's Record in Cause No. F02-25495-IV. "CR-II" refers to the Clerk's Record in Cause No. F02-25497-IV.

counts of aggravated sexual assault of a child. *See* Rep.'s R., Vol. IV at 95 [hereinafter cited as RR-volume # at page]. The jury assessed punishment at thirty years imprisonment on each count, and the trial court sentenced petitioner accordingly with the sentences to run consecutively. RR-V at 40, 43. On November 14, 2005, the court of appeals affirmed the convictions. *McBreen v. State*, Nos. 05-03-01424-CR, 05-03-01425-CR, 2005 WL 3032496, at *1, 4 (Tex. App .– Dallas, Nov. 14, 2005, no pet.). Although petitioner moved to extend the time for filing a petition for discretionary review for each conviction, the Court of Criminal Appeals denied the motions. (*See* Ex. A attached to Resp.'s Answer [hereinafter Answer].) The appellate decision summarized the background information:

> The record reflects appellant was awarded custody of his son, L.M ., and daughter, B.M., when he divorced his wife. During the time B.M. lived with appellant, she shared his bed in a downstairs bedroom and L.B. [sic] slept in a bedroom upstairs. When B.M. was four years old, appellant began having her put her hand on his penis and masturbate him four or five times a week. When B.M. was seven, appellant performed oral sex on her and began penetrating her mouth with his penis on a frequent basis. Appellant also began showing B.M. pornographic movies depicting men penetrating women's anuses with their penises. When B.M. was eight or nine years old, appellant began penetrating her anus with his penis at least two times a week. Appellant continued to sexually assault B.M. on a regular basis until she moved in with her mother at the age of eleven.

> During the time B.M. and L.M. lived with appellant, he gave them home-grown marijuana on a daily basis and alcohol on occasion. Appellant also kept B.M. home from school or pulled her out of classes early on a regular basis. The school counselor and appellant's ex-wife testified he frequently dressed B.M. in clothes that were "sexy" and not age appropriate. B.M. made her outcry at the age of eleven, after she had lived with her mother for a period of time.

*Id.* at *1. A review of the evidence presented at trial supports the appellate summary. *See* RR-III and RR-IV.

On April 19, 2006, petitioner filed a state habeas application for writ of habeas corpus for

each of his convictions.  *See* S.H. Tr.[2] at 2; S.H. Tr.-02 at 2.  On August 16, 2006, the Court of

Criminal Appeals denied each application without written order on findings of the trial court

without hearing.  *See Ex parte McBreen*, No. WR-65,363-01, slip. op at 1 (Tex. Crim. App. Aug. 16,

2006); *Ex parte McBreen*, No. WR-65,363-02, slip op. at 1 (Tex. Crim. App. Aug. 16, 2006).

Petitioner filed the instant petition with an attached memorandum in support on August 14,

2006, when he signed and placed it in the prison mail system.  (Pet. Writ of Habeas Corpus (Pet.)

at 9); *see also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file

their federal pleadings when they place them in the prison mail system).  Respondent thereafter filed

an answer and provided the state-court records.  (Answer.)  Petitioner responded to the Answer

with a series of filings.  (*See* Introduction received Sept. 20, 2007, (docketed as a Reply); Petr.'s

Reply with Br. in Supp. received Jan. 18, 2008, (docketed as a Supplement to Reply); and Petr.

McBreen's Reply with Br. in Supp. received June 18, 2008, (docketed as a Reply and hereinafter

referred to as Reply).)

## C.  Substantive Issues

In thirteen grounds for relief, petitioner claims that he is being held unlawfully.  (*See* Pet. at

7-8; Mem. Supp.[3] at 1-18.)  More specifically, he raises the following claims[4]:

---

[2] "S.H. Tr." denotes the state habeas records attached to *Ex parte McBreen*, No. WR-65,363-01, slip op. (Tex. Crim. App. Aug. 16, 2006).  "S.H. Tr.-02" denoted the habeas records attached to *Ex parte McBreen*, No. WR-65,363-02, slip op. (Tex. Crim. App. Aug. 16, 2006).

[3] The memorandum in support consists of sixteen pages with numerous attachments.  (*See* Mem. Supp.)  On November 27, 2006, the Court received a supplemental memorandum in support of the petition, which contains various documents and pages seventeen and eighteen of the original supporting memorandum.  (*See* Mem. at 1 and attachments.)  The Court cites to the supporting memorandum, including pages seventeen and eighteen, as "Mem. Supp."

[4] For the grounds for relief that contain multiple claims, the Court presents them in the order utilized by respondent so as to avoid possible confusion.  Petitioner does not state the multiple claims in a listed format.

(1) incomplete trial records;

(2) misconduct or errors during voir dire:
    (a) incompetent juror selected to be on jury;
    (b) prospective jurors seated in wrong order;
    (c) prospective jurors absent from parts of voir dire;
    (d) trial court defined reasonable doubt in impermissible manner;
    (e) prospective jurors were not allowed to answer questions at times;
    (f) counsel told panel that petitioner had signed an application for probation;
    (g) counsel did not object to trial court comment regarding length of trial;
    (h) counsel failed to take better notes for striking prospective jurors;
    (i) counsel stated a biased opinion that the charged offenses were heinous;
    (j) counsel said SUV instead of SVU (Special Victims Unit); and
    (k) counsel agreed to strike prospective juror Dennison;

(3) court reporter errors;

(4) ineffective assistance of appellate counsel:
    (a) failure to request or review a complete set of trial transcripts;
    (b) failure to raise meritorious issues, including
        (i) failure of trial counsel to request expert witness;
        (ii) failure to call doctors to testify;
        (iii) conflict of interest; and
        (iv) *Brady*[5] claim; and
    (c) failure to communicate/investigate prior to filing *Anders*[6] brief;

(5) prosecutorial misconduct:
    (a) failing to comply with discovery regarding
        (i) CPS records and
        (ii) grand jury minutes, a copy of warrant, police records, and medical records;
    (b) failing to provide witness list until day of trial;
    (c) allowing witnesses to violate "the rule" against being in the court-room during other testimony;[7] and

---

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

[6] *Anders v. California*, 386 U.S. 738 (1967).

[7] Courts and litigants often refer to Tex. R. Evid. 614 as "the rule". *See, e.g., Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). In general, the rule provides: "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." "The purpose of placing witnesses under the rule is to prevent the testimony of one witness from influencing the testimony of another, consciously or not." *Russell*, 155 S.W.3d at 179. The rule has four exceptions to witness exclusion, and various "articles in Chapter 36 of the Code of Criminal Procedure" may also be relevant. *See id.* at 179-80.

(d) denying petitioner a fair trial due to tainted possible cross-examination;[8]

(6) abuse of discretion by trial court:
    (a) failing to qualify State's expert witness;
    (b) denying mitigating witness Mark McBreen;[9]
    (c) denying CPS documents containing mitigating evidence;
    (d) failing to hold a hearing to inquire into conflict between petitioner and defense counsel; and
    (e) failing to rule on all pretrial motions;

(7) ineffective assistance of trial counsel:
    (a) failed to inform petitioner of plea offer until day of trial;
    (b) failed to file motions and obtain rulings;
    (c) failed to communicate, investigate, or prepare petitioner for his testimony and cross-examination;
    (d) labored under a conflict of interest;
    (e) failed to challenge a faulty warrant;
    (f) failed to object to tainted evidence;
    (g) failed to introduce petitioner's divorce decree;
    (h) failed to object to expert testimony, obtain or use documents for impeachment;
    (i) failed to interview doctor;
    (j) failed to subpoena witnesses for trial and punishment;
    (k) changed strategy the day of trial;
    (l) informed voir dire panel that petitioner had signed an application for probation; and
    (m) failed to request competency hearing;

(8) denial of fair direct appeal;

(9) illegally stacked sentences;

(10) insufficient evidence to support conviction;

(11) unlawful search and seizure;

---

[8] Respondent grouped this claim together with Claim 5(c). The Court separates them into separate claims despite their close relationship because respondent asserts different forms of procedural bar against the two claims.

[9] Although the appellate decision refers to this witness as "Marck McBreen", *see McBreen v. State*, Nos. 05-03-01424-CR, 05-03-01425-CR, 2005 WL 3032496, at *2 (Tex. App .– Dallas, Nov. 14, 2005, no pet.), petitioner refers to the witness in this action as "Mark McBreen".

(12) unlawful arrest; and

(13) violation of privilege against self-incrimination.

(Pet. at 7-8; Mem. Supp. at 1-18.)

**D. Procedural Issues**

Respondent contends that Claims 2(a); 4(b)(ii), (iii), and (iv); 5; 6(a) through (d); 7(a) through (g); 10, 11, and 12 are barred by the federal procedural default doctrine. (Answer at 6-13.)

## II. PROCEDURAL BAR

Respondent asserts two types of procedural bar. (*See* Answer at 6-13.) He contends that some claims are procedurally barred because the state court explicitly applied a state procedural bar. (*See id.* at 9-11.) Other claims are barred because petitioner failed to raise them in either a petition for discretionary review or a state application for writ of habeas corpus, and he is now precluded from raising them due to the Texas abuse of writ doctrine. (*Id.* at 11-13.)

"A federal court may not grant a petition for a writ of habeas corpus where the state court expressly denied the claim based on an independent and adequate state procedural rule." *Wright v. Quarterman*, 470 F.3d 581, 586 (5th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 730 (1991)), *cert. denied*, 127 S. Ct. 2996 (2007). Only "firmly established and regularly followed" state procedural rules are adequate to bar federal habeas review. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). "If the state law ground is not firmly established and regularly followed, there is no bar to federal review and a federal habeas court may go to the merits of the claim." *Rosales v. Dretke*, 444 F.3d 703, 707 (5th Cir. 2006) (citing *Barr v. Columbia*, 378 U.S. 146, 149 (1964)). Although "[t]he adequacy of a state law ground to preclude federal court review of federal constitutional claims is a federal question" which is examined *de novo*, *id.*, the petitioner has the "burden to demonstrate that

the procedural bar is not regularly applied or that the rule was exorbitantly applied under the circumstances of the case", *Wright*, 470 F.3d at 586 (citations omitted). When determining whether an "adequate" state law ground exists, an important consideration is whether the ground has been applied to identical or similar claims. *Rosales*, 444 F.3d at 707.

In general, federal courts may not review a state court decision that rests on an adequate and independent state procedural default unless the habeas petitioner shows "cause" for the default and "prejudice attributable thereto" or demonstrates that the failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989). When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review. *See id.*; *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995). Furthermore, when a claim has not been reviewed by the state's highest court, this Court may find the claim procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The general rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply when a petitioner has not presented his claims to the highest court of the state, and the state court to which he would be required to present his claims would now find the claims procedurally barred. *Id.* To present a claim to the highest state court means that the petitioner has fairly presented such claim to the correct court in a procedurally proper manner. *See Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). One does not "fairly present" the substance of a particular claim by raising a claim based upon a different legal theory. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). "It is not enough that all the facts necessary to support the . . . claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*,

459 U.S. 4, 6 (1982) (citation omitted).

## A. Implicit Application of Procedural Bar

Respondent urges the Court to find Claims 2(a); 4(b)(ii), (iii), and (iv); 5(a)(ii) and (d); 6(d); and 7(d) through (g) procedurally barred because petitioner neither raised them in a petition for discretionary review nor in a state habeas application, and consequently the Court of Criminal Appeals would deem the claims barred under its abuse-of-writ doctrine. (Answer at 11-13.)

Petitioner filed no petition for discretionary review. A review of the petitioner's state habeas applications show that except for Claim 6(d),[10] petitioner did not assert the listed claims in a state habeas application. Because Claim 6(d) was subjected to state habeas review, there is no procedural default for it. However, the failure to properly present the other claims to the highest court in Texas constitutes a procedural default that could bar this Court from considering the claims on federal habeas review. *See In re Bagwell*, 401 F.3d 312, 315 (5th Cir. 2005); *Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir. 2004). Were this Court to require petitioner to now present the defaulted claims to the Texas Court of Criminal Appeals, the claims would be subject to dismissal under the Texas abuse-of-the-writ doctrine, Tex. Code Crim. Pro. Ann. art. 11.07, § 4.[11] That doctrine "prohibits a second [state] habeas petition, absent a showing of cause, if the applicant urges grounds therein that could have been, but were not, raised in his first habeas petition." *Nobles v. Johnson*, 127 F.3d

---

[10] In his state habeas applications, petitioner claimed that the trial court abused its discretion by failing to hold a hearing on his motion to dismiss his court appointed attorney. *See* S.H. Tr. at 9; S.H. Tr.-02 at 9. Although petitioner did not specifically allege that the hearing was necessary to inquire into an alleged conflict between petitioner and his attorney, such additional allegation does not materially change the claim.

[11] Texas also has an abuse of writ doctrine specifically applicable to capital cases. *See* Tex. Code Crim. P. Ann. art. 11.071, § 5(a). No material difference exists between the rules or their analysis. *Emery v. Johnson*, 139 F.3d 191, 195 n.3 (5th Cir. 1997). The Court may thus freely cite to either capital or non-capital cases that address the abuse of writ doctrine.

409, 423 (5th Cir. 1997) (footnote omitted). "[A]rticle 11.07 § 4 is an adequate and independent state procedural ground to bar federal habeas review and . . . has been strictly and regularly applied since 1994." *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000). When such a state procedural ground exists, "federal courts ordinarily will not review questions of federal law." *Id.* Consequently, unless petitioner can overcome the procedural bar, the Court need not further consider the defaulted claims.

To overcome the procedural bar, a petitioner must demonstrate "(1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or (2) that failure to consider his claims will result in a fundamental miscarriage of justice." *Id.* at 524 (quoting *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997)). Petitioner has shown no cause for his failure to present Claims 2(a); 4(b)(ii), (iii), and (iv); 5(a)(ii) and (d); and 7(d) through (g) to the Texas Court of Criminal Appeals. Although petitioner argues generally that he proceeds *pro se*, is unskilled in the legal arena, has been denied access to an adequate prison law library, has chronic medical issues and complex psychiatric problems, and received ineffective assistance of counsel throughout the state processes, he makes no specific attempt to explain the failure to present these claims in his state habeas applications. (*See generally* Reply at 1-19.) He argues that although he attempted to file a timely petition for discretionary review, he was confused by the process. (*Id.* at 1-2.)[12] He also argues that the state courts denied his attempts to correct his state filings, and that he is actually innocent. (*Id.* at 5, 14.) Because petitioner did not raise these claims in his pro se state applications for writ of habeas corpus, he cannot rely on ineffective assistance of counsel to show cause for the

---

[12] Petitioner's reply brief contains two unnumbered pages between pages one and three. The Court refers to both pages as page two.

default. Like the instant federal petition, petitioner's state applications set forth thirteen grounds for relief, and exhibit ample access to legal materials. His general arguments for showing cause for his failure to raise Claims 2(a); 4(b)(ii), (iii), and (iv); 5(a)(ii) and (d); and 7(d) through (g) to the Texas Court of Criminal Appeals do not suffice and he presents no adequate reason for the failure.

Petitioner has also shown no actual prejudice as a result of these claims. Nor has he demonstrated a need to prevent a miscarriage of justice. The latter exception is "confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). Despite his assertion of innocence, petitioner has not shown that, factually, he did not commit the crimes for which he was convicted. He has thus not overcome the state procedural bar. Accordingly, the procedural default doctrine bars federal habeas relief on Claims 2(a); 4(b)(ii), (iii), and (iv); 5(a)(ii) and (d); and 7(d) through (g).

## B. <u>Explicit Application of Procedural Bar</u>

Respondent urges the Court to find Claims 5(a)(i), (b), and (c); 6(a), (b) and (c); 7(a), (b), and (c); 10; 11; and 12 procedurally barred because the state court explicitly applied a state procedural bar. (Answer at 9-11.) Respondent relies on statements by the habeas court that such claims are not cognizable or could not be raised through the habeas process. (*See id.*) The relevant portion of the habeas findings state:

> 7. This Court finds that Applicant has failed to present proof that the prosecutor engaged in misconduct in this case. Some of these allegations were raised and rejected on direct appeal and are, therefore, not cognizable in this writ application. *See Ex parte Ramos*, 977 S.W.2d 616, 617 (Tex. Crim. App. 1998).

> 8. This Court finds that Applicant has failed to present proof that this Court abused its discretion and failed to act as a gatekeeper. Some of these allegations were raised

and rejected on direct appeal and are, therefore, not cognizable in this writ application. *See Ex parte Ramos*, 977 S.W.2d 616, 617 (Tex. Crim. App. 1998).

9. This Court finds that trial counsel, Kevin Brooks, is an experienced and proficient attorney. . . . In his affidavit, Mr. Brooks responds to each of Applicant's alleged acts of ineffective representation. This Court finds that Mr. Brooks competently and ably represented Applicant and provided effective representation at the trial. . . .

Some of these allegations were raised and rejected on direct appeal and are, therefore, not cognizable in this writ application. *See Ex parte Ramos*, 977 S.W.2d 616, 617 (Tex. Crim. App. 1998).

. . .

12. This Court finds that Applicant cannot raise sufficiency of the evidence claims in this Application. *Ex parte McClain*, 860 S.W.2d 349, 351 (Tex. Crim. App. 1994).

13. This Court finds that Applicant has failed to prove his assertion that his conviction was obtained by an unconstitutional search and seizure. *See Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985); *Ex parte Adams*, 768 S.W.2d 281, 288-289 (Tex. Crim. App. 1989). Further, issues of probable cause for search and seizure or arrest are not cognizable on habeas application. *Ex parte Kirby*, 492 S.W.2d 579, 580-581 (Tex. Crim. App. 1973).

14. This Court finds that Applicant has failed to prove his assertion that his conviction was obtained by an unlawful arrest. *See Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985); *Ex parte Adams*, 768 S.W.2d 281, 288-289 (Tex. Crim. App. 1989). Further, issues of probable cause for search and seizure or arrest are not cognizable on habeas application. *Ex parte Kirby*, 492 S.W.2d 579, 580-581 (Tex. Crim. App. 1973).

*See* S.H. Tr. at 97-99; S.H. Tr.-02 at 101-03.

To find claims procedurally barred from federal habeas review in the instant context, the Court must find that petitioner procedurally defaulted such claims, that the state court relied upon an adequate and independent state procedural ground that has been strictly and regularly applied to bar state review, and petitioner has not overcome the procedural bar by showing cause for and prejudice from such default, or by demonstrating that application of the bar will result in a fundamental miscarriage of justice.

### 1. Claim 10 (Insufficiency of Evidence)

Respondent urges the Court to find Claim 10 procedurally barred for petitioner's failure to raise it on direct appeal. (Answer at 11.)

Under Texas law, it has long been held that challenges to the sufficiency of the evidence of a conviction must be raised on direct appeal. *See Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) (holding evidentiary sufficiency claims not cognizable in post-conviction, collateral attack); *West v. Johnson*, 92 F.3d 1385, 1389 n.18 (5th Cir. 1996) (recognizing the long-standing legal principle under Texas law). Petitioner did not challenge the sufficiency of the evidence to support his convictions on direct appeal. The state habeas court clearly and expressly applied this bar. Petitioner did not cure the procedural default by presenting his sufficiency claim to the Texas Court of Criminal Appeals in his state applications for writ of habeas corpus. That the Court of Criminal Appeals denied petitioner's state applications for writ of habeas corpus rather than dismissing the sufficiency-of-the-evidence claims does not alter the procedural nature of the bar. *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004).

Petitioner's procedural default of his sufficiency-of-the-evidence claim under Texas law constitutes an adequate and independent state procedural ground to bar federal habeas review. When a defendant fails to properly exhaust insufficiency-of-the-evidence claims, the Court may find the claims procedurally barred if the "time to file a petition for discretionary review has expired." *Haley v. Cockrell*, 306 F.3d 257, 264 (5th Cir. 2002) (citing Tex. R. App. P. 68.2), *vacated on other grounds*, 541 U.S. 386 (2004). Petitioner cannot now present the claim in a petition for discretionary review because the time for doing so has passed. Further, he cannot present the claim in another state writ because such presentation is not proper under state law. Consequently, the Court may

find Claim 10 procedurally barred unless petitioner overcomes the bar by showing cause and prejudice or a fundamental miscarriage of justice. *See Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000).

As already discussed, petitioner has not shown himself to be actually innocent of the crimes for which he was convicted and therefore cannot show that a fundamental miscarriage of justice will result from a failure to consider Claim 10. In addition, petitioner has shown no cause for failing to raise his sufficiency claims on direct appeal. Although his appellate attorney filed an *Anders* brief, petitioner filed a *pro se* brief setting out his appellate claims. Petitioner could have raised his insufficiency claim in his *pro se* brief but did not do so. Furthermore, the filing of an *Anders* brief requires the appellate court to conduct an independent examination of the proceedings to determine whether the appeal is wholly frivolous before it will allow the attorney to withdraw from the case. *See Anders v. California*, 386 U.S. 738, 744-45 (1967). Such examination requires consideration of the sufficiency of the evidence. Because the court agreed that the appeal was frivolous, *see McBreen v. State*, Nos. 05-03-01424-CR, 05-03-01425-CR, 2005 WL 3032496, at *1, 4 (Tex. App.– Dallas, Nov. 14, 2005, no pet.), it implicitly found sufficient evidence to support the convictions. It thus appears that petitioner will not be prejudiced by the failure of this Court to review the sufficiency of the evidence.[13]

For these reasons, the Court finds Claim 10 procedurally barred from federal habeas review.

---

[13] Were the Court inclined to consider the sufficiency claim despite the procedural bar, the complainant in this case provided sufficient testimony to support the convictions. *See* RR-III at 5-68. Under *Jackson v. Virginia*, 443 U.S. 307 (1979), the complainant's testimony alone is legally sufficient to support petitioner's convictions for aggravated sexual assault. To the extent petitioner seeks to challenge the factual sufficiency of the evidence, such claim is "not cognizable on federal habeas review." *Spencer v. Dretke*, No. 3:02-CV-1988-D, 2005 WL 696719, at *4 n.2 (N.D. Tex. Mar. 23, 2005) (findings, conclusions, and recommendation), *accepted by* 2005 WL 955969 (N.D. Tex. Apr. 26, 2005).

### 2. Claim 11 (Illegal Search and Seizure) and Claim 12 (Illegal Arrest)

Respondent urges the Court to find Claims 11 and 12 procedurally barred for petitioner's failure to raise them on direct appeal.  (Answer at 11.)

A review of the claims petitioner raised in state court reveals that he did not challenge the legality of the search and seizure or his arrest on direct appeal.  Such failure may constitute a procedural default under Texas law that may bar this Court from reviewing the claim on federal habeas review.  *See Burnett v. Quarterman*, No. H-07-0408, 2007 WL 2220959, at *7 (S.D. Tex. July 31, 2007) (recognizing that *Ex parte Kirby*, 492 S.W.2d 579, 580-81 (Tex. Crim. App. 1973) and *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998) (opinion upon rehearing en banc) may pose a procedural bar for Fourth Amendment claims in federal court, and the petitioner had not carried his burden to show that they did not bar his claims).  When petitioner appealed his August 28, 2003 convictions, "the law in Texas as established on rehearing in *Ex parte Gardner* required a convicted criminal defendant to present any and all claims then available as points of error on direct appeal", and a failure to do so constitutes a procedural default.  *See Gutierrez v. Dretke*, 392 F. Supp. 2d 802, 822 (W.D. Tex. 2005).

As already discussed, petitioner has not shown himself to be actually innocent of the offenses for which he was convicted.  He has also shown no cause for not presenting his claims of illegal search and seizure and illegal arrest on direct appeal.  In addition, petitioner's Fourth Amendment claims are barred from federal habeas review under *Stone v. Powell*, 428 U.S. 465 (1976) "[b]ecause Texas provides the processes whereby petitioner could have obtained full and fair litigation of his Fourth Amendment claims."  *Carter v. Quarterman*, No. 3:04-CV-0649-N-BH, 2006 WL 2946720, at *12 (N.D. Tex. Sept. 22, 2006) (recommendation of Mag. J.), *accepted by* unpub. op. (N.D. Tex.

Oct. 12, 2006). Consequently, petitioner can show no prejudice from application of the procedural bar to Claims 11 and 12.

### 3. *Other Claims*

Petitioner raised Claims 5(a)(i), (b), and (c); 6(a), (b) and (c); and 7(a), (b), and (c) on direct appeal and in his state habeas applications, but did not pursue them in a petition for discretionary review. The court of appeals considered these claims when it affirmed petitioner's convictions. *See McBreen v. State*, Nos. 05-03-01424-CR, 05-03-01425-CR, 2005 WL 3032496, at *2-4 (Tex. App .– Dallas, Nov. 14, 2005, no pet.). The state habeas court did not identify the specific subparts of petitioner's claims of prosecutorial misconduct asserted in Claim 5, trial court abuses of discretion asserted in Claim 6, or ineffective assistance of counsel asserted in Claim 7. *See* S.H. Tr. at 97-98; S.H. Tr.-02 at 101-02. Instead, for the claims of prosecutorial misconduct and abuses of discretion, the habeas court first found that petitioner had failed to present proof of such claims, followed by a general statement that some of the allegations were not cognizable in the habeas action because the claims were raised and rejected on direct appeal. *See* S.H. Tr. at 97; S.H. Tr.-02 at 101. With respect to the claims of ineffective assistance of counsel, the habeas court first found that counsel provided effective representation at trial, followed by a general statement that some allegations were not cognizable because they had been raised on appeal. *See* S.H. Tr. at 97-98; S.H. Tr.-02 at 101-02. For each general statement of procedural bar, the habeas court relied upon *Ex parte Ramos*, 977 S.W.2d 616, 617 (Tex. Crim. App. 1998).

In *Ex parte Ramos*, the Texas Court of Criminal Appeals stated: "Five claims involving jury selection and a claim involving the court's charge to the jury at the guilt stage of the trial have already been raised and rejected on the direct appeal from this conviction. They will not be ad-

dressed on habeas corpus." 977 S.W.2d at 617 (citation omitted). From this brief passage, the Court cannot definitively determine whether *Ramos* constitutes an adequate and independent state procedural ground that has strictly and regularly applied. In addition, based upon the manner in which the habeas court invoked *Ramos*, it is not clear that the court clearly and expressly relied on *Ramos* as an independent basis for its disposition of the case. When the state court appears to have considered the merits of a claim and does not explicitly rely on a procedural bar to resolve such claim, there is no procedural default. *See Dowthitt v. Johnson*, 230 F.3d 733, 757 n.36 (5th Cir. 2000). Because Claims 5(a)(i), (b), and (c); 6(a), (b) and (c); and 7(a), (b), and (c) "can be resolved more easily by looking past any procedural default" in light of these ambiguities, the Court may properly assume that the claims are not defaulted. *See Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004). Accordingly, the Court will not consider these claims defaulted.

In conclusion, the procedural default doctrine bars federal habeas relief only on Claims 2(a); 4(b)(ii), (iii), and (iv); 5(a)(ii) and (d); and 7(d) through (g), 10, 11, and 12.

### III. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit findings of fact and those findings of fact implicit in the state court's mixed law and fact conclusions. *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

In this case, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of Criminal Appeals in such writ. The AEDPA standards enumerated in 28 U.S.C. § 2254(d) thus apply to the claims raised in this action that are not procedurally barred from review.

## IV. COMPLETENESS OF TRIAL RECORD

In Claims 1 and 3, petitioner contends that the court reporter omitted critical parts of petitioner's and other witnesses' testimony and the entire testimony of Belle Green.[14] (Pet. at 7; Mem. Supp. at 1-2, 6.) Other than the alleged complete omission of Ms. Green's testimony, petitioner's initial filings identify only one statement allegedly omitted from the record – where Lindsey McBreen allegedly stated "Isn't that what you wanted me to say?" (*See* Pet. at 7; Mem. Supp. at 1-2, 6.) In his reply, petitioner also indicates that some of his testimony regarding his medication was omitted

---

[14] In Claim 1, petitioner also contends that his trial and appellate attorneys failed to procure pre-trial transcripts for his direct appeal. (Pet. at 7; Mem. Supp. at 1-2.) The Court addresses this contention with petitioner's other claims of ineffective assistance of counsel.

from the record. (*See* Reply at 6.)

The state appellate court ordered the trial court to conduct a hearing because petitioner questioned the completeness of the trial record. *See* S.H. Tr. at 115-16; S.H. Tr.-02 at 124-25. On April 22, 2005, the trial court thus conducted such hearing. *See* Rep.'s R., Vol. I (Appellate) [hereinafter cited as RR-App]. The State informed the court that Belle Green was not called as a witness. (*See id.* at 2.) Moreover, the court reporter testified under oath that her records did not reflect that Ms. Green testified as a witness or that Lindsey McBreen made the statement alleged by petitioner. (*Id.* at 3.) The trial court found that Ms. Green did not testify and that Lindsey McBreen did not make the alleged statement. (*Id.* at 3-4.) When the appellate court found petitioner's appeals frivolous and without merit on November 14, 2005, it at least implicitly found no merit to petitioner's contention that the record was less than complete. *See McBreen v. State*, Nos. 05-03-01424-CR, 05-03-01425-CR, 2005 WL 3032496, at *1-4 (Tex. App .– Dallas, Nov. 14, 2005, no pet.).

On habeas review, petitioner claimed that the trial records were incomplete and provided affidavits from his sister (Victoria Levine) and mother (Mary Downey) to support his contention that the record is incomplete. *See* S.H. Tr. at 7-8, 54-56, 59-60; S.H. Tr.-02 at 7-8, 54-56, 61-62. Although the state habeas court did not specifically address the completeness of the record, it found the court reporter "reliable and efficient" and that she "transcribed what she saw (head nods) and heard during the trial of this matter." S.H. Tr. at 96; S.H. Tr.-02 at 100. Such findings are consistent with the findings issued after the April 22, 2005 hearing. The habeas court at least implicitly found no omission from the record, and found the proffered affidavits not credible. By denying petitioner's state habeas applications on the findings of the trial court, the Court of Criminal Appeals likewise found no omission from the record. *See Ex parte McBreen*, No. WR-65,363-01, slip. op at

1 (Tex. Crim. App. Aug. 16, 2006); *Ex parte McBreen*, No. WR-65,363-02, slip op. at 1 (Tex. Crim. App. Aug. 16, 2006).

Petitioner relies on the same affidavits to support his federal petition. He provides no clear and convincing evidence, however, to overcome the state courts' implicit findings of fact and credibility determinations. Consequently, the Court has no basis to overturn the state decision on grounds of an incomplete trial record. Claims 1 and 3 entitle petitioner to no federal habeas relief.

## V. MISCONDUCT OR ERRORS DURING VOIR DIRE

In Claim 2, petitioner claims that prospective jurors were seated out of order during voir dire (Claim 2(b)); missed parts of voir dire (Claim 2(c)); and were sometimes not allowed to answer questions (Claim 2(e)). (Pet. at 7; Mem. Supp. at 3-5.) He also claims that the trial court defined reasonable doubt in an impermissible manner (Claim 2(d)).[15] (Pet. at 7; Mem. Supp. at 3.)

Erroneous comments made by a judge during voir dire are subject to a harmless error analysis under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *See Fuentes v. Dretke*, 89 Fed. App'x 868, 871-73 (5th Cir. 2004); *Bell v. Quarterman*, No. 3:05-CV-0272-D, 2007 WL 2332560, at *4 (N.D. Tex. Aug. 16, 2007) (accepting recommendation of Mag. J.) Petitioner's other claims of error or misconduct are subject to harmless error analysis. *See Satterwhite v. Texas*, 486 U.S. 249, 256 (1988) (holding that "violations that pervade the entire proceeding fall within th[e] category" of structural errors that are not subject to harmless error analysis); *Rose v. Clark*, 478 U.S. 570, 579 (1986) (holding that "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis").

---

[15] Claims 2(f) through (k) assert deficiencies of counsel, and will be addressed when the Court considers whether petitioner received ineffective assistance of counsel.

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)). To be entitled to federal habeas relief due to a trial error, petitioner must show the error actually prejudiced him. *Brecht*, 507 U.S. at 637.

Petitioner has not shown that he has been prejudiced by the alleged voir dire misconduct or errors. That prospective jurors were seated out of order, absent for parts of voir dire, or did not voice answers to some questions does not exhibit prejudice. Furthermore, although the court discussed the reasonable doubt standard during voir dire, RR-II at 12-13, it specifically defined the standard in its jury charge, CR at 50-51; CR-II at 22-23. Error related to reasonable doubt during voir dire, if any,[16] was cured by instructions to the jury. The Court finds no reasonable possibility that the alleged misconduct or errors at voir dire contributed to the verdict. Harmless error is insufficient to obtain federal habeas relief. Consequently, Claims 2(b) through (e) entitle petitioner to no relief in this § 2254 action.

## VI. PROSECUTORIAL MISCONDUCT

In his fifth claim for relief, petitioner complains that the prosecutor engaged in misconduct by failing to comply with discovery regarding CPS records (Claim 5(a)(i)), failing to provide witness list until day of trial (Claim 5(b)), and allowing "the alleged victim and her mother" to violate Tex.

---

[16] Because the Court finds the alleged error harmless, there is no need to actually determine whether the trial court made an erroneous comment about reasonable doubt at voir dire.

R. Evid. 614 (Claim (5)(c)). (Mem. Supp. at 9-10.)

"Prosecutorial misconduct implicates due process concerns." *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). Actions and statements of a prosecutor may violate due process in two ways. "They may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation." *Id.* (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)). The Court should "first determine the type or types of misconduct alleged, because '[t]he case law supplies a different test for each kind of due process violation.'" *Id.* (quoting *Rogers*, 848 F.2d at 608).

In this case, petitioner in effect alleges a general violation of due process rather than a specific violation of a particular right.[17] In such cases, the Court asks whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate standard of review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *DeChristoforo*, 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959

---

[17] The Court recognizes that petitioner alleges that the denial of discovery violates the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. (*See* Mem. Supp at 9.) Despite these conclusory allegations, the claims of prosecutorial misconduct do not implicate any constitutional right other than the right to due process.

F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted).[18]

Although petitioner claims that the prosecutor failed to provide CPS records, the trial records clearly reflect that the prosecutor delivered the CPS records to the court for in camera review. *See* Rep.'s R., Vol. I (Pretrial) [hereinafter cited as RR-Pretrial] at 6. The Court finds no misconduct regarding the CPS records. As to the witness list, the prosecution appears to have provided the list in accordance with petitioner's motion to list witnesses, *see* CR at 28; RR-Pretrial at 5. Even if the timing of the witness list constituted misconduct, the Court finds no reasonable probability that the verdict would have differed had the list been given to petitioner earlier. Petitioner's trial was not rendered fundamentally unfair.

With respect to the allegation that the prosecutor allowed the alleged victim and her mother to violate Tex. R. Evid. 614, the Court likewise finds no constitutional violation. A "state court's failure to follow its own procedural rules does not of itself raise federal constitutional questions cognizable in habeas corpus." *Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981). Furthermore, both Rule 614 and Tex. Code. Crim. Proc. 36.03 permit the victim and her guardian to remain in the courtroom in certain circumstances. Petitioner has not shown that his trial was rendered fundamentally unfair by the alleged violation of Rule 614.

Claims 5(a)(i), (b), and (c) provide no basis for relief in this § 2254 action.[19]

---

[18] This is the only test necessary to apply for generic violations of due process. If the alleged misconduct rises to the level of constitutional error, the Court need not apply a harmless error test. *Darden*, 477 U.S. at 183 n.15. The Fifth Circuit Court of Appeals has observed, furthermore, that application of a harmless error test would be "superfluous" after a determination that the trial was rendered fundamentally unfair. *Kirkpatrick v. Blackburn*, 777 F.2d 272, 280 (5th Cir. 1985).

[19] To the extent, Claims 5(c) and (d) are considered together, the same analysis would apply to find no basis for habeas relief through Claim 5(d). Additionally, were the Court inclined to consider Claim 5(a)(i) on its merits despite petitioner's procedural default, the claim would fail because petitioner has not shown that any failure to provide grand jury minutes, a copy of a warrant, or police or medical records rendered petitioner's trial fundamentally unfair.

## VII.  TRIAL COURT ERROR

In his sixth claim, petitioner complains that the trial court abused its discretion when it failed to qualify the State's expert witness (Claim 6(a)), prohibited witness Mark McBreen from testifying in mitigation (Claim 6(b)), disallowed CPS documents containing mitigation evidence (Claim 6(c)), failed to hold a hearing to inquire about a conflict between petitioner and counsel (Claim 6(d)), and failed to rule on pretrial motions (Claim 6(e)).  (Mem. Supp. at 11-12.)

Trial court rulings are matters of state law which are not subject to re-examination by the federal courts.  It is not "the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "[A] federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling also violates a specific federal constitutional right or renders the petitioner's trial fundamentally unfair." *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997).  A petitioner is entitled to federal habeas relief due to trial error only if such error is not harmless, *i.e.*, it had a substantial effect or influence in determining the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). Petitioner has the burden to show that the alleged errors actually prejudiced him.  *Id.* at 637.

In this case, petitioner has not carried his burden.  He has not shown that the alleged errors had a substantial effect or influence on the verdict.  With respect to the State's expert witness, petitioner has not shown a reasonable probability that the outcome of trial would have differed had the witness been excluded.  With respect to the testimony from Mark McBreen and CPS documents, petitioner has shown no reasonable probability that the testimony or documents would have affected

the verdict or sentence had the evidence been before the jury. Petitioner has likewise failed to show a substantial effect or influence on the verdict caused by the alleged failure to rule on pretrial motions or to hold a hearing about a conflict between counsel and petitioner. Accordingly, no subpart of Claim 6 entitles petitioner to federal habeas relief.

## VIII. INEFFECTIVE ASSISTANCE OF COUNSEL

In his seventh claim, petitioner asserts that his trial attorney rendered ineffective assistance at and before trial and during the punishment phase. (*See* Mem. Supp. at 13-16.) He also asserts deficiencies of counsel that occurred during voir dire in part of Claim 2, (*see id.* at 3-6; Pet. at 7), and ineffective assistance of appellate counsel in Claim 4, (*see* Pet. at 8; Mem. Supp. at 7-8). Within his first claim, petitioner contends that his trial and appellate attorneys failed to procure pre-trial transcripts for his direct appeal. (Pet. at 7; Mem. Supp. at 1-2.)

## A. Standard of Review

The Sixth Amendment to the United States Constitution provides criminal defendants a right to effective assistance of counsel during trial. U.S. Const., art. VI. Criminal defendants, furthermore, have a constitutional right to effective assistance of counsel in their first appeal. *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Douglas v. California*, 372 U.S. 353, 356-57 (1963).

### 1. *Strickland Test*

To successfully state a claim of ineffective assistance of counsel, a petitioner must ordinarily demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. This two-part test also governs claims of ineffective assistance of appellate counsel.

*United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. For allegations of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). When evidence adduced at trial overwhelmingly establishes a petitioner's guilt, there is generally no reasonable probability that deficiencies at trial affected the verdict. *Johnson v. Cockrell*, 301 F.3d 234, 239 (5th Cir. 2002); *Creel v. Johnson*, 162 F.3d 385, 396 (5th Cir. 1998). To show prejudice in the sentencing context, petitioner must demonstrate "a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh." *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993); *see also United States v. Grammas*, 376 F.3d 433, 438 n.4 (5th Cir. 2004) (holding that *Spriggs* survived *Glover v. United States*, 531 U.S. 198 (2001) in the § 2254 context).

To show prejudice from an alleged deficiency of appellate counsel, the petitioner must show a reasonable probability that but for the deficiency the outcome on appeal would have differed. *See*

*Blanton v. Quarterman*, 543 F.3d 230, 245 (5th Cir. 2008); *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001) (holding that when an attorney has "failed to adequately brief an issue on direct appeal, [petitioner] must show initially that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue"). When the alleged appellate deficiency is a failure to brief an issue on appeal, the petitioner "must then demonstrate that the attorney's deficient performance led to a fundamentally unfair and unreliable result." *Dovalina*, 262 F.3d at 474-75.

Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are also insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

Although the *Strickland* test ordinarily applies when a prisoner alleges denial of effective assistance of counsel, petitioner has alleged a conflict of interest and constructive denial of counsel. (*See* Mem. Supp. at 7, 16.) Because such allegations may require a different standard of review, the Court must consider these allegations first.

### 2. *Conflict of Interest*

Petitioner asserts that his attorney labored under a conflict of interest because of racial differences. (*See* Mem. Supp. at 16.) He also suggests a conflict caused by his court-appointed attorney seeking payment for services. (*Id.* at 11 (discussing conflict set out in pretrial proceeding before the trial court)); RR-Pretrial at 7 (indicating that counsel asked petitioner's family for money).

When a prisoner shows an actual conflict that adversely affected his attorney's performance and thus denied him his Sixth Amendment right to effective assistance of "conflict-free counsel," *Cuyler v. Sullivan*, 446 U.S. 335 (1980) provides the applicable standard for evaluating claims of ineffective assistance of counsel. *See Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000). A defendant may show ineffective assistance of counsel under *Cuyler* without showing prejudice. *Id.* at 781-82. "A conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Medina*, 161 F.3d 867, 870 n.1 (1998) (quoting *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985)) (alteration in original) (internal quotation marks omitted). There is no actual conflict of interest, however, unless "defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo*, 205 F.3d at 781. The Fifth Circuit Court of Appeals has held that the *Cuyler* standard applies only to claims of ineffective assistance of counsel resulting from conflicts of interest caused by multiple representation. *See United States v. Newell*, 315 F.3d 510, 516 (5th Cir. 2002); *Beets v. Scott*, 65 F.3d 1258, 1270-72 (5th Cir. 1995) (*en banc*). The standard enunciated in *Strickland* applies when a prisoner alleges a conflict of interest of a different ilk. *See Beets*, 65 F.3d at 1272.

In this case, petitioner identifies no conflict of interest caused by multiple representation. Consequently, *Strickland* provides the proper standard of review, and prejudice is not presumed. *See Newell*, 315 F.3d at 516; *Beets*, 65 F.3d at 1270-72.

### 3. *Constructive Denial of Counsel*

Petitioner also asserts that he was constructively denied counsel on appeal when his attorney filed an *Anders* brief and moved to withdraw from representing petitioner. (*See* Mem. Supp. at 7-8.)

"The general rule announced in *Strickland*, that to prevail on an ineffective assistance claim counsel's performance must be both deficient and prejudicial, is modified when the complained of performance results in the actual or constructive denial of any assistance of appellate counsel." *Harris v. Day*, 226 F.3d 361, 364 (5th Cir. 2000). In cases involving the actual or constructive denial of appellate counsel, "prejudice is presumed." *Penson v. Ohio*, 488 U.S. 75, 88-89 (1988); *Harris*, 226 F.3d at 364; *Hughes v. Booker*, 220 F.3d 346, 349 (5th Cir. 2000).

In *Anders*, the Supreme Court recognized that counsel, by following "certain safeguards", could withdraw from representation without denying their clients their constitutional right to effective assistance of counsel. *See Hughes*, 220 F.3d at 349. In *Anders* the Supreme Court "held that, in order to protect indigent defendants' constitutional right to appellate counsel, courts must safeguard against the risk of granting such requests in cases where the appeal is not actually frivolous." *Smith v. Robbins*, 528 U.S. 259, 264 (2000). *Anders* "set forth an acceptable procedure", but it is merely "a prophylactic one; the States are free to adopt different procedures, so long as those procedures adequately safeguard a defendant's right to appellate counsel." *Id.* at 264-65. The failure of appellate counsel to follow an acceptable procedure to withdraw from an appeal in which he or she deems frivolous constructively denies the appellant of counsel. *Harris*, 226 F.3d at 364-65; *Hughes*, 220 F.3d at 349.

In this case, counsel appears to have followed procedures deemed acceptable in *Anders*. The court of appeals considered the arguments and briefing before it, but determined that there were no nonfrivolous issues for appeal. It did not indicate that counsel failed to follow the established procedure, and nothing in the record indicates that counsel failed to do so. A defendant is not constructively denied appellate counsel, when counsel follows a procedure that "afford[s] adequate and

29

effective appellate review to indigent defendants" and thus "reasonably ensures that an indigent's appeal will be resolved in a way that is related to the merit of the appeal." *Smith v. Robbins*, 528 U.S. 259, 276-77 (2000).

Petitioner must therefore satisfy the two-part *Strickland* test in order to succeed on his ineffective assistance claims.

## B. Ineffective Assistance of Trial Counsel

In Claim 7, petitioner asserts that his trial attorney rendered ineffective assistance when he (a) failed to inform petitioner of plea offer until day of trial; (b) failed to file motions and obtain rulings; (c) failed to communicate, investigate, or prepare petitioner for his testimony and cross-examination; (h) failed to object to expert testimony, obtain or use documents for impeachment; (i) failed to interview doctor; (j) failed to subpoena witnesses; (k) changed strategy the day of trial; (l) informed voir dire panel that petitioner had signed an application for probation; and (m) failed to request competency hearing.[20]  (*See* Mem. Supp. at 13-16.)  In Claims 2(f) through (k), he also asserts deficiencies of counsel that occurred during voir dire.  (*See id.* at 3-6; Pet. at 7.)  In Claim1, petitioner contends that his trial attorney failed to procure pre-trial transcripts for his direct appeal. (Pet. at 7; Mem. Supp. at 1-2.)

With respect to the alleged failure of counsel to procure pre-trial transcripts for appellate purposes contained within Claim 1, the record demonstrates that the appellate court obtained such transcript.  *See* RR-Pretrial at 1. Consequently, the Court finds no prejudice.

The deficiency alleged in Claim 7(a) clearly did not prejudice petitioner because he asserts

---

[20]  The Court has already found subparts (d) through (g) of Claim 7 procedurally barred.  To avoid confusion, the Court retains the original subpart lettering.

in his reply that he would have insisted on going to trial even if the State offered probation.  (*See* Reply at 7.)  Even without that assertion, petitioner has not shown that he would have accepted a thirty-five year offer had he known about it earlier.  With respect to Claims 7(b), (c), (h), (i), and (k), and Claims 2(g) through (k), petitioner has likewise not shown a reasonable probability that but for the alleged deficiencies, the outcome of his trial would have differed.  With respect to Claim 7(j), he has not shown a reasonable probability of a different outcome at trial had other witnesses been called or a less harsh sentence had counsel subpoenaed character witnesses to testify at punishment.

The deficiency at issue in Claim 7(l) and 2(f) relates to a voir dire discussion about the range of punishment including probation.  While informing the venire panel that "if a person has no felony convictions" probation can be considered as punishment if an application for probation is filed, a panel member inquired as to whether that applied "[i]f he is found guilty".  *See* RR-II at 94.  Defense counsel responded with "[h]e has filed an application for probation."  *Id.*  When considered in its proper context, counsel's response clearly relates back to the hypothetical person that has no felony convictions; the comment does not specifically refer to petitioner.  The comment does not constitute deficient representation, and if it did, petitioner has shown no prejudice from it.  For Claim 7(m), petitioner has not shown that he was incompetent to stand trial.  Consequently, even had his attorney requested a competency hearing, petitioner has shown no reasonable probability that the outcome at trial would have differed.

Claims 7(a), (b), (c), and (h) through (m); Claims 2(f) through (k); and the ineffective assistance of counsel portion of Claim 1 do no entitle petitioner to any federal habeas relief.[21]

---

[21]  Were the Court inclined to consider 7(d) through (g) despite the procedural bar doctrine, such claims would fail because petitioner has shown no reasonable probability that but for such deficiencies the outcome of his trial would have differed.

## C. Ineffective Assistance of Appellate Counsel

In his fourth ground for relief, petitioner claims that he received ineffective assistance from his appellate attorney when his attorney failed (a) failed to request or review a complete set of trial transcripts; (b)(i) failed to raise trial counsel's failure to request an expert witness;[22] and (c) failed to communicate/investigate prior to filing *Anders* brief. (Pet. at 8; Mem. Supp. at 7-8.) In Claim 1, petitioner contends that his appellate attorney failed to procure pre-trial transcripts for his direct appeal. (Pet. at 7; Mem. Supp. at 1-2.)

As noted above, the record demonstrates that the appellate court obtained the transcripts of the pre-trial proceedings. *See* RR-Pretrial at 1. Consequently, there is no prejudice for this part of Claim 1 and Claim 4(a). Petitioner has also shown no prejudice from the deficiencies alleged in Claim 4(c). He has shown no reasonable probability that but for the alleged deficiencies the outcome of his appeal would have differed.

With respect to Claim 4(b)(i), the Court finds no deficiency in appellate counsel's failure to claim that trial counsel rendered ineffective assistance by failing to request an expert witness. When the appellate court considered the related issues that trial counsel rendered ineffective assistance by failing to request funds for an expert and object to the State's expert, it found no ineffective assistance of counsel because the trial "record does not contain trial counsel's explanation for his trial strategy." *See McBreen v. State*, Nos. 05-03-01424-CR, 05-03-01425-CR, 2005 WL 3032496, at *4 (Tex. App.– Dallas, Nov. 14, 2005, no pet.). Because the omitted claim would have met the same fate, it had insufficient merit to raise on direct appeal.

---

[22] Because the Court has found petitioner's claims that counsel failed to raise other meritorious issues on appeal (Claims 4(b)(ii), (iii), and (iv)) procedurally barred, those claims are not considered further.

Claims 4(a), (b)(i), and (c) and the claimed ineffective assistance of appellate counsel found in Claim 1 entitle petitioner to no federal habeas relief.

## IX. DENIAL OF FAIR DIRECT APPEAL

In his eighth claim, petitioner asserts that the absence of effective assistance of counsel at trial and on appeal deprived him of a fair direct appeal. (Mem. Supp. at 17.) He further asserts that his petition for discretionary review (PDR) was denied even though he had received a letter which indicated that he had filed no such petition. (*Id.*)

For petitioner to be entitled to federal habeas relief, the Court "must find constitutional error at the trial or direct review level." *Morris v. Cain*, 186 F.3d 581, 585 n.6 (5th Cir. 1999); *accord Martinez v. Johnson*, 255 F.3d 229, 246 (5th Cir. 2001) ("Habeas relief under 28 U.S.C. § 2254 is reserved for vindication of federal constitutional rights."). It is well settled that "errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief." *Morris*, 186 F.3d at 585 n.6. Because the Court has found no ineffective assistance of counsel at trial or on appeal, such alleged constitutional violation did not deprive petitioner of a fair direct appeal. Moreover, because the Court has found no constitutional violation in this case, this claim necessarily fails. Petitioner's PDR issue states no constitutional violation standing alone, and likewise does not entitle petitioner to federal habeas relief.

## X. STACKED SENTENCES

In his ninth claim, petitioner complains that the trial court stacked his two thirty-year sentences even though he had elected punishment by jury. (Mem. Supp. at 17.) He states that "it was [his] understanding" that the jury ran the sentences concurrently. (*Id.*)

Under state law, it is within the discretion of the trial judge to cumulate sentences for two

or more convictions.  *See* Tex. Code Crim. Proc. Ann. art. 42.08 (Vernon 2006).  Nevertheless, under state law applicable when petitioner committed his offenses in or about December 2001, sentences for offenses arising out of the same criminal episode that are prosecuted in the same criminal action shall run concurrently unless specifically excepted from that mandate.  *See* Tex. Penal Code § 3.03(a) (Vernon 2003).[23]  Section 3.03(b) provides an exception to mandatory concurrent sentences in certain circumstances, including when sentencing for offenses under Tex. Penal Code §§ 22.011 (sexual assault) and 22.021 (aggravated sexual assault) committed against a victim who was younger than seventeen years of age at the time of the offense.  "In short, so long as the law authorizes the imposition of cumulative sentences, a trial judge has absolute discretion to stack sentences."  *Nicholas v. State*, 56 S.W.3d 760, 765 (Tex. App. – Houston [14th Dist.] 2001, pet. ref'd).  Even when "the jury assessed the sentences, a trial judge may order that the sentences run consecutively."  *Alameda v. State*, 235 S.W.3d 218, 224 (Tex. Crim. App.) (en banc), *cert. denied*, 128 S. Ct. 629 (2007).

Whether the trial court should stack sentences for multiple convictions is a matter of state law.  *See Barrow v. State*, 207 S.W.3d 377, 379-82 (Tex. Crim. App. 2006) (en banc) (rejecting challenges based upon *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and the United States Constitution).  In this case, the state habeas court found the sentences properly stacked.  S.H. Tr. at 99; S.H. Tr.-02 at 103.  By denying the state applications on the findings of the habeas court, the Court of Criminal Appeals  rejected the complaint about sentence stacking.  It is beyond the scope of federal habeas review to review the correctness of the state court's interpretation of state law.  *Young v. Dretke*, 356

---

[23] Although the Court applies § 3.03 as it existed prior to amendments in 2005 and 2007, such amendments do not alter the general rule set forth in § 3.03(a).

F.3d 616, 628 (5th Cir. 2004). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Because the Court of Criminal Appeals agreed that there was no error in stacking petitioner's sentences, this Court defers to the state court's interpretation of state law regarding that matter. Additionally, as found in *Barrow*, the cumulation of sentences by the trial court violates neither petitioner's constitutional right to a jury trial nor to due process. For all of these reasons, this claim entitles petitioner to no federal habeas relief.

## XI. SELF INCRIMINATION

In his thirteenth ground for relief, petitioner claims that his Fifth Amendment right against self-incrimination was violated. In its entirety, Claim 13 states: "When I was put on the stand my [attorney] told me to admit to why I smoked pot with the alleged victim. I had planned on pleading the fifth." (Mem. Supp. at 18.)

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const., art. V. Based upon the allegations in Claim 13, it appears that petitioner voluntarily chose to testify on his own behalf. In the absence of compelled testimony, there is no Fifth Amendment violation.

Criminal defendants have the right to testify in their own defense. *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987). By testifying in his own defense, a defendant "waives his fifth amendment privilege against self-incrimination at least to the extent of cross-examination relevant to issues raised by his testimony." *United States v. Beechum*, 582 F.2d 898, 907 (5th Cir. 1978) (en banc). Furthermore, blanket assertions of the privilege against self-incrimination are insufficient to exclude

testimony.  *United States v. Fricke*, 684 F.2d 1126, 1132 (5th Cir. 1982).  For the Fifth Amendment to provide protection against a particular question, the question must potentially lead to incriminating evidence.  *See Ohio v. Reiner*, 532 U.S. 17, 21-22 (2001).

In this case, the prosecution did not question petitioner about smoking marijuana with the victim until after petitioner used it as an example of a mistake he had made with his child.  The Court finds no violation of the Fifth Amendment.  Claim 13 entitles petitioner to no federal habeas relief.

## XII.  CUMULATIVE ERROR

Petitioner asserts that the cumulative errors of counsel in this case violate his due process rights.  (Mem. Supp. at 16.)  In his reply, he expands the assertion to include all alleged errors. (Reply at 11.)

Although the Fifth Circuit has recognized the concept of cumulative error, it has specifically held that

> federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process."

*See Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (en banc) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  The court stressed that "any cumulative error theory must refer only to errors committed in the state trial court.  A habeas petitioner may not just complain of unfavorable rulings or events in the effort to cumulate errors."  *Id.* at 1458.

In this instance, although petitioner makes numerous allegations of error, some of his allegations dealt with violations of state law.  In addition, many of the alleged errors were found not to

36

be error at all. To the extent the individual errors were of constitutional dimension, they did not so infect the trial that petitioner's conviction violates due process. Consequently, petitioner is entitled to no habeas relief on his claim of cumulative error.

## XIII. STATE CONSIDERATION OF CLAIMS

Petitioner raised each of his non-barred federal claims in his state writ. The Court of Criminal Appeals denied that writ, and thus adjudicated the claims on the merits. The decision to deny habeas relief at the state level is consistent with applicable Supreme Court precedent. The decision involved no unreasonable application of Supreme Court precedent. The adjudication of the claims did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented to the state court. Under applicable Supreme Court standards and the AEDPA standards, petitioner is entitled to no habeas relief on the claims raised in the instant petition.

## XIV. EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## XV. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

SIGNED this 21st day of November, 2008.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

# INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE